**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LISA JEFFERSON, | ) | NO. CV 12-1516 SS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

Lisa Jefferson ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") to deny her application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636©, to the jurisdiction of the undersigned United States

Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.
## PROCEDURAL HISTORY

Plaintiff Lisa Jefferson filed an application for a period of disability and disability insurance benefits on May 19, 2009. (AR 129). She alleged a disability onset date of July 4, 2008. (Id.). The Agency initially denied her application on August 18, 2009. (AR 76). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Peggy M. Zirlin on June 15, 2010. (AR 98). On October 8, 2010, the ALJ issued a decision denying benefits. (AR 23). On October 13, 2010, Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 18-19). The Appeals Council denied Plaintiff's request on December 15, 2011. (AR 5-7). Plaintiff filed the instant action on February 17, 2012.

## III.
## FACTUAL BACKGROUND

**A. General Factual Background**

Plaintiff was born on December 16, 1960. (AR 47). Plaintiff's highest completed level of education is the tenth grade. (Id.). Plaintiff was employed at National Security Group as a security guard since 1995. (AR 67). Plaintiff claims she was injured on the evening of July 4, 2008, during work. Plaintiff alleges that she twisted her

2

ankle and fell on her right knee as she was running to inform her manager of nearby gang activity. (Id.). She has not been employed since the injury. (AR 48). Plaintiff complains of constant right knee pain, low back pain, anxiety and depression. (AR 43-64).

Plaintiff alleges that she can stand or walk for only about five minutes due to pain from her right knee. (AR 51). Plaintiff claims that she uses a cane when she walks because her right knee unexpectedly gives out, causing her to fall. (AR 50-51). Plaintiff also asserts that she can only sit for about five minutes due to her low back pain. Finally, Plaintiff claims that she suffers from anxiety attacks and depression caused from her knee pain and her "situation". (AR 59). Plaintiff alleges that she gets anxiety attacks three to four times a week. (Id.). However, Plaintiff has not received treatment for anxiety or depression. (AR 53-54)

Plaintiff testified that she lays in bed for most of a twenty-four hour day. (AR 52-53). She further testified that she only leaves her bed to use the restroom or to eat. (AR 52-53). Plaintiff does not do any household chores. (AR 53). Plaintiff lives with a friend who provides her meals. (Id.). However, Plaintiff is able to dress and bathe herself. (AR 58). Plaintiff claims that she does not drive due to side effects from her medication. (AR 56). Plaintiff also goes shopping and to the movies with her friends. (Id.).

**B. Medical History**

On July 29, 2008, Dr. Brian Padveen, a chiropractor, examined Plaintiff in connection with Plaintiff's workers' compensation claim. (AR 291). Following an evaluation, Plaintiff was referred to Dr. Gil Tepper, an orthopedic surgeon. (AR 234). On September 4, 2008, Dr. Tepper performed a right knee and ankle examination. (AR 237). He reported flexion of the right knee as 95/150. (Id.). Dr. Tepper also reviewed an MRI of Plaintiff's right knee dated August 5, 2008 from the Miracle Mile Medical Center. (AR 185, 238). Dr. Tepper reported a tear of the lateral meniscus. (AR 238). Dr. Tepper also reported that Plaintiff was "an excellent candidate for a right knee arthroscopic surgery." (AR 238).

Plaintiff underwent outpatient arthroscopic surgery on January 9, 2009, with Dr. Ramin Rabbani. (AR 215-17). Following the surgery, Plaintiff was instructed not to drive or operate heavy machinery, perform any strenuous activities, and to keep the leg elevated as much as possible for at least three days. (AR 270). Plaintiff was also prescribed Norco and Naprosyn. (Id.). Plaintiff claims that her knee occasionally swells as a result of the surgery. (AR 65-66). Plaintiff testified that she elevates her legs four times a day and uses ice packs to help with the swelling. (AR 65-66).

On January 13, 2009, Plaintiff returned to Dr. Tepper for a post operative evaluation. (AR 227-30). Plaintiff claimed she had twenty percent improvement since the last time she had visited Dr. Tepper. (AR 227). After an evaluation, Dr. Tepper diagnosed Plaintiff as "status

post right knee scope" and "right ankle osteoarthritis." (AR 229). On January 22, 2009, Plaintiff returned to Dr. Tepper for a re-evaluation. (AR 231). Plaintiff stated that her knee pain was "mild" and noted an eighty percent improvement in overall symptoms since the surgery. (Id.). Dr. Tepper recommended physical therapy three times a week for the following four weeks. (Id.). Plaintiff again presented to Dr. Tepper on February 12, 2009. (AR 227). She complained of knee pain with buckling, falling, sharp pain, and aching pain. (Id.). Dr. Tepper prescribed Naprosyn and Cimetidine, an ice/heat machine, an inferential unit to use at home for therapy, and continued physical therapy for the right knee. (AR 228).

On May 14, 2009, Dr. Rick Pospisil examined Plaintiff in connection with Plaintiff's Workers' Compensation claim. (AR 277-278). Dr. Pospisil diagnosed Plaintiff with post partial medial menisectomy of the right knee. Dr. Pospisil prescribed medication and gave Plaintiff a Synvisc injection. (AR 277-78). On a follow-up visit on July 1, 2009, Dr. Pospisil gave Plaintiff a second Synvisc injection and put Plaintiff on a weight loss program. (Id.). Plaintiff later received a third Synvisc injection which she claimed helped relieve the pain. (AR 314).

On July 28, 2009, Dr. John Sedgh, an internist, performed a consultative examination of Plaintiff, in connection with her application for SSI benefits. (AR 188-192). With respect to Plaintiff's right knee, Dr. Sedgh found evidence of crepitation, swelling and limited range of motion. (AR 191-92). Dr. Sedgh reported that Plaintiff "can lift and carry twenty pounds occasionally and ten pounds frequently. She can stand and walk two hours in an eight-hour

day with normal breaks. She can sit for six hours in an eight hour day. Kneeling, crouching and stooping should be limited to occasional." (AR 192). Dr. Sedgh also opined that Plaintiff does not need a cane for prolonged walking. (Id.).

Dr. Frank Wilson, a state agency physician,[1] examined Plaintiff on August 18, 2009. (AR 195-99). Dr. Wilson diagnosed Plaintiff with arthritis, obesity, and degenerative joint disease. (AR 195). Dr. Wilson also reported that Plaintiff has a residual function capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently; stand or walk for a total of at least two hours in an eight hour work day with the assistance of a hand-held device; sit for a total of six hours in an eight hour work day with normal breaks; and no balancing, kneeling, or crawling. (AR 196-97).

On September 23, 2009, Dr. Steven J. Brockel, a chiropractor, examined Plaintiff in connection with her workers' compensation claim. (AR 274-85). With respect to Plaintiff's right knee, Dr Brockel reported tenderness to palpation over the medial joint line, flexion of 120 degrees, and that Plaintiff ambulates with a limp favoring her right knee. (AR 277). Dr. Brockel diagnosed Plaintiff with "traumatic arthritis involving the medial joint line." (AR 278). Dr. Brockel also reported a sleep and anxiety disorder caused by Plaintiff's knee pain,

---

[1] Disability Determination Services (DDSs) are State agencies responsible for developing medical evidence and making the initial determination on whether or not a claimant is disabled or blind under the law. *Disability Determination Process,* SOCIAL SECURITY, http://www.ssa.gov/disability/determination.htm (last modified Nov. 29, 2012).

6

as well as gastritis due to polypharmacia. (AR 278-80). Dr. Brockel concluded that Plaintiff had "reached maximum medical improvement." (AR 283).

On May 14, 2010, Plaintiff returned to Dr. Brockel with complaints of continued right knee pain with weakness, that the knee "gives out," and that there is "popping" in the knee. (AR 209-14). In reviewing an MRI of Plaintiff's right knee from May 5, 2010, Dr. Brockel reported "tricompartmental osteoarthritis changes, Baker cyst containing synovial osteochondromas, and a bucket-handle tear of posterior horn of lateral meniscus." (AR 210-211). These findings were also seen in an MR anthrogram of Plaintiff's knee from May 5, 2010. (Id.). Dr. Brockel requested authorization for a knee specialist consultation for consideration of surgery. (Id.).

On June 2, 2010, Dr. Pospisil, the orthopedic surgeon, reported that the May 5, 2010 MR arthrogram of Plaintiff's right knee shows that Plaintiff had an "extruded bucket-handle tear of the lateral meniscus and posterior horn." (AR 317). Without further examination, Dr. Pospisil opined that Plaintiff "is a candidate to undergo right knee arthroscopy . . ." (Id.).

In a letter dated June 21, 2010, Dr. Pospisil wrote that Plaintiff had been under his care since May 14, 2009, and that he was requesting authorization for arthroscopic partial lateral meniscectomy which would be followed with post-operative therapy three times a week for eight weeks. (AR 223). Furthermore, in a Medical Source Statement also from June 21, 2010, Dr. Pospisil reported that Plaintiff can lift up to five

7

pounds frequently and up to ten pounds occasionally, sit for one hour in an eight hour work day, bend occasionally, but stand and walk for zero hours.  (AR 226).  However, no record of objective findings were included.  (Id.).

## IV.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.) (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not

substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## V.

## DISCUSSION

**The ALJ Provided Clear And Convincing Reasons for Rejecting Plaintiff's Subjective Pain Testimony**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding her subjective symptoms. (Pl's Memorandum at 5). Specifically, Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony because it lacked support in the objective medical evidence. (Id. at 6-8). The Court disagrees.

Credibility determinations are the province of the ALJ. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995). To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2006). First, the plaintiff must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, if the plaintiff meets this threshold, and there is no evidence of malingering, the ALJ can reject the plaintiff's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for

doing so. (Id. at 1281). While subjective pain testimony cannot be rejected on the sole ground that it is not corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effect. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); see also Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999)(inconsistencies with clinical observations "can satisfy the requirement of a clear and convincing reason for discrediting a claimant's testimony."). Other factors that an ALJ may consider when assessing the plaintiff's credibility include: (1) ordinary techniques of credibility evaluation, such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the plaintiff's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2001).

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony. Initially, the ALJ determined that Plaintiff's "subjective complaints and alleged limitations are out of proportion to the objective clinical findings." (AR 37-38). The ALJ also found that Plaintiff's subjective complaints and limitations are not consistent with the treatment she received. (AR 38). The ALJ reasoned that if Plaintiff were as disabled as she claims, it is reasonable to believe that she would take full advantage of treatment options available to her

10

from her Workers' Compensation doctors, but she did not. (Id.) Finally, the ALJ discredited Plaintiff's testimony due to inconsistencies in the testimony.

As noted above, the ALJ first determined that Plaintiff's testimony regarding her subjective limitations was out of proportion to the objective medical findings. With respect to Plaintiff's testimony that she is bed-bound nearly twenty fours per day, the ALJ noted that there is no evidence of severe disuse muscle atrophy or loss of muscle tone that would be compatible with her alleged inactivity and inability to function. (AR 37). Plaintiff was instructed to keep her leg elevated as much as possible for the three days following her surgery. (AR 270). The medical records contain no further indications of required bed-rest or that she must elevate her body parts during a normal workday. (AR 38). Moreover, Plaintiff testified that she falls "a lot." (AR 51). The ALJ noted, however, that "no such problems were reflected in the medical records." (AR 37). In fact, the medical records contain only two reports of Plaintiff falling: once after her injury in July 2008 and once after her surgery in February 2009. (AR 277, 296). These inconsistencies with the objective medical evidence are clear and convincing reasons to reject Plaintiff's testimony.

The ALJ also determined that Plaintiff's subjective complaints were inconsistent with the treatment she received. (AR 38). Although Plaintiff complained of a wide variety of ailments, she really only sought treatment for her knee condition. Plaintiff had access to further treatment through her workers' compensation claim as well as through her access to County health care, but did not seek treatment for

other alleged impairments. Plaintiff's limited treatment history, therefore, undermines the credibility of Plaintiff's subjective symptom testimony.

Furthermore, Plaintiff claimed that she experiences adverse side effects from her medication, primarily sleepiness. (AR 53). The ALJ noted, however, that there was no corroboration in the medical record. (AR 38). Plaintiff's only mention of dissatisfaction with her medication was to Dr. Brockel, who diagnosed gastritis due to polypharmacia. (AR 280). See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001)(side effects from medication properly excluded where there was only passing mentions of the side effects from medication in some of the medical records).

Plaintiff testified that she suffers from anxiety and depression due to her "situation." (AR 52, 59-60). Plaintiff testified that she suffers from anxiety attacks three to four times a week, varying in lengths of fifteen minutes or longer. (AR 59). However, as noted above, because Plaintiff receives support from General Relief, she can seek treatment for psychiatric and cognitive disorders from County hospitals and medical clinics, and very likely through her workers' compensation claim. (AR 38). The ALJ stated that it is reasonable to assume that, if [Plaintiff] were as disabled as she claims, she would take advantage of treatment options available to her. (Id.). However, although Plaintiff did seek treatment for her knee condition, she failed to seek treatment for any other illness or symptom that she allegedly suffers from. (Id.). See Tommasetti, 533 F.3d at 1039 (an ALJ may

consider a claimant's unexplained or inadequately explained failure to seek treatment in assessing credibility).

The ALJ also observed that it would be reasonable to expect that Plaintiff's alleged additional symptoms or ailments would be reflected in the various workers' compensation reports. (AR 34). However, the record did not reflect any reporting to Plaintiff's doctors of such severe panic or anxiety attacks or other such symptoms. (AR 34).

In sum, the Court concludes that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony regarding her subjective complaints and limitations. Accordingly, no remand is required.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

## VI.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this order and the Judgment on counsel for both parties.

DATED: February 25, 2013

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

THIS MEMORANDUM AND DECISION IS NOT INTENDED FOR PUBLICATION ON WESTLAW, LEXIS OR ANY OTHER ELECTRONIC REPORTING OR PUBLISHING SERVICE